Judgment rendered April 8, 2026.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 56,803-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CHRISTOPHER SPIRES AND                   Plaintiffs-Appellants
LAURA LIVELY, INDIVIDUALLY
AND ON BEHALF OF NOLAN
SPIRES, A MINOR

                         versus

ST. FRANCIS MEDICAL CENTER,              Defendants-Appellees
MARC DE SOLER, M.D. AMANDA
CARNES, NNP, AND KATHLEEN
LIRETTE, NNP

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Ouachita, Louisiana
Trial Court No. 2022-0562

Honorable Frederick D. Jones, Judge

* * * * *

KARL BERNARD LAW, LLC                    Counsel for Appellants
By: G. Karl Bernard

NELSON, ZENTNER, SARTOR, &               Counsel for Appellees,
SNELLINGS, LLC                           Amanda Carnes, NNP,
By: David H. Nelson                      and Kathleen Lirette, NNP

HUDSON, POTTS & BERNSTEIN, LLP           Counsel for Appellee,
By: Gordon L. James                      Marc de Soler, M.D.
    Donald H. Zeigler, III

BREAZEALE, SACHSE & WILSON, LLP          Counsel for Appellee,
By: Thomas Richard Temple, Jr.           St. Francis Medical Center
    Alexa Nicole Candelora

* * * * *

Before PITMAN, STEPHENS, and ROBINSON, JJ.

**PITMAN, C. J.**

Plaintiffs Christopher Spires and Laura Lively, individually and on behalf of their minor child, Nolan Spires, appeal the summary judgments granted in this medical malpractice suit in favor of Defendants Marc De Soler, M.D., Amanda Carnes, NNP, and Kathleen Lirette, NNP. For the following reasons, we affirm the granting of the summary judgments.

### FACTS

Plaintiffs filed suit for medical malpractice against St. Francis Medical Center ("St. Francis"), Dr. Marc De Soler and nurse practitioners Amanda Carnes and Kathleen Lirette.

Nolan was born at University Health-Monroe via Cesarean-section at 37 weeks' gestation on October 11, 2017. His APGAR scores (a rapid, 10-point assessment of a newborn's health, calculated at one and five minutes after birth) were good, 9 and 9 (normal is 7-10), but he subsequently began developing signs of respiratory distress. He was originally placed on a Continuous Positive Airway Pressure (CPAP) machine and had acceptable oxygen saturations, but his distress worsened. He was transferred to the neonatal intensive care unit at St. Francis.

At St. Francis, Nolan was intubated, and it was discovered that he had developed a right-sided pneumothorax requiring placement of a chest tube. His respiratory acidosis eventually resolved, and his blood gases improved. His distress was diagnosed as a condition called transient tachypnea of the newborn. On October 12, 2017, Nolan began having seizure-like symptoms, which lasted for 30 to 45 minutes and continued intermittently. Nurse practitioner Carnes notified Dr. De Soler, the neonatal medical specialist and lead physician on his case. Nolan was given Ativan; Cerebyx (Dilantin) and

phenobarbital to control the seizure symptoms.  He was administered these

drugs at certain intervals with Dr. De Soler testing his toxicity levels several

times.  The doctor noted in the discharge summary:

> The infant had a phenobarbital level of 33 on 10/14 at 5:30 and
> had a Dilantin level of 55 on 10/14 at 5:30 a.m., after the infant
> received a bolus of Cerebyx at 0555 hours, just before obtaining
> the level.  I repeated the Dilantin level at 1300 hours on 10/14,
> about 8 hours after the bolus was given and it was 69.

Plaintiffs alleged that Dr. De Soler administered the bolus of Cerebyx

prior to receiving the results of the level that had been taken at 5:30 a.m. and

that this mistake caused their son's resulting damages.[1]  They claim that

almost immediately after the Cerebyx was administered at 5:55 a.m., Nolan

experienced a sudden hemodynamic deterioration, which resulted in heart

rate readings in the 60s.  A Code Blue was called, he was intubated and

required chest compressions, and a needle was inserted into his left chest

without return of air.  He was very hypotensive and an EKG was performed,

which revealed a stiff heart with poor relaxation and contraction of the heart.

Bilateral pneumothorax was identified by chest X-ray and tubes were placed.

Plaintiffs claimed that after more than two days of steady decline and failure

of the physician and staff to stabilize him, plans were made to transfer Nolan

to Children's Hospital of New Orleans, a facility which could provide a

higher level of care.  However, when the crew arrived to transfer him, Nolan

was too unstable to be immediately transported.

---

[1] The results of the test were not available until 7:14 a.m.  The medical review panel addressed this issue in its report, noted the time of the testing and the administration of the bolus of Cerebyx, and stated, "To expect the lab work report on Dilantin to be returned quickly is unreasonable.  The Dilantin level of 55.8 was reported at 7:14 am.  The evidence indicates Dr. De Soler was notified promptly and discontinued the Cerebyx. Prior to this, the infant had a cardiac respiratory arrest, which was managed appropriately.  Subsequent Dilantin level showed an increase to 69.8. The evidence supports Dr. De Soler's efforts to determine the etiology of the high rise of levels, including metabolism disorder."

When he ultimately arrived in New Orleans on October 15, 2017, it was discovered that Nolan was suffering from Dilantin toxicity, and appropriate treatment began. Nolan remained in New Orleans until December 2, 2017. During his stay, he required several interventions, including an extracorporeal membrane oxygenation (ECMO) procedure to serve as a bypass for a poorly functioning circulatory and respiratory system.

Plaintiffs assert that Nolan now suffers with developmental, cognitive, motor, speech and social/behavioral delays. He cannot understand nonverbal communications, walk or use the restroom independently and has bouts of emotional distress and other deficits.

Following the filing of Plaintiffs' original medical malpractice claim against Defendants, the medical review panel ("MRP") published its opinion entitled, "Opinion and Written Reasons for Conclusion." A case report attached to the MRP's written reasons is in the original record of this suit and is entitled, "Cardia Collapse Secondary to Phenytoin Toxicity in a Neonate Treated with Extracorporeal Membrane Oxygenation Support." Plaintiffs alleged that this report is based on Nolan's medical history and was published in the Journal of Medical Toxicology in November 2019.[2] It found that although medication overdose and toxicity are uncommon in neonates, some medications pose a risk. One of those is Fosphenytoin, which is sold under the name Cerebyx.

The MRP found that the evidence presented supported the conclusion that St. Francis and its staff, particularly the pharmacy staff, failed to meet

---

[2] Defendants alleged that the case study, while attached to the MRP's written opinion and seeming to be exactly descriptive of Nolan's case, never mentions him by name. This was not an issue until the case was later appealed to this court after rendition of the reconsideration of the summary judgment at issue in this appeal.

3

the applicable standard of care as charged in the complaint and that the conduct complained of was a factor in the resulting damages. Specifically, the MRP stated that the pharmacy staff of St. Francis failed particularly in the preparation of the dose and delivery of the Cerebyx, which was "inappropriate and incorrect, leading to the Dilantin toxicity and level increases[.]" Based on this finding, Plaintiffs filed a timely suit against all Defendants on February 22, 2022, and alleged all of their actions fell below the standard of care.

Dr. De Soler answered and denied all allegations, except he admitted that the MRP's findings as to St. Francis were as recited above. He also alleged that the findings as to him were not included by counsel and that the MRP found unanimously that his actions were appropriate and within the standard of care for a neonatologist. He further alleged that the MRP had issued a unanimous opinion that the evidence did not support the conclusion that he had breached any applicable standard of care in Nolan's treatment.

Nurse practitioners Lirette and Carnes answered together and alleged that the MRP resulted in a unanimous written opinion in their favor, which would be presented at trial.

After the answers were filed, Dr. De Soler filed a motion for summary judgment and sought dismissal of Plaintiffs' suit because (1) they could not meet their burden of proof that he had breached any applicable standard of care, (2) this medical malpractice claim involved issues outside the realm of a layperson's understanding and (3) Plaintiffs did not have a medical expert who could testify that his conduct had breached an applicable standard of care. On this basis, he sought dismissal of the suit against him.

4

Nurse practitioners Carnes and Lirette collectively filed a motion for summary judgment on the same basis, i.e., that Plaintiffs lacked an expert witness to contradict the findings of the MRP that they had not breached the appropriate standard of care; and, thus, the case against them should be dismissed.

A hearing on the motions for summary judgment was held on July 28, 2023, and the matter was taken under advisement.

On August 1, 2023, the trial court found that summary judgment should be granted and issued reasons, stating that Plaintiffs are required to provide expert witness testimony on the matters at issue and none was presented. On September 11, 2023, the trial court granted both motions for summary judgment and dismissed all of Plaintiffs' claims against Defendants.

On September 20, 2023, Plaintiffs filed a motion for reconsideration of the trial court's granting of Defendants' motions for summary judgment, which was granted, effectively allowing Plaintiffs a new trial on those motions.

Some procedural confusion ensued when Plaintiffs filed a notice for a devolutive appeal, which the trial court granted. The record was filed with this court but was dismissed as being prematurely before our court since the reconsideration of the motions for summary judgment was still outstanding.

On March 11, 2025, the trial court held a hearing to reconsider the granting of the previous motions for summary judgment. Also at issue was whether Plaintiffs were required to produce expert testimony to provide proof of the necessary standard of care, or whether this was a case in which

a lay person could infer without it that the medical personnel had committed malpractice.

On May 6, 2025, a judgment was entered denying Plaintiffs' motion for reconsideration and affirming the judgment on the motions for summary judgment previously entered into the record. Reasons for judgment issued indicated the trial court found expert testimony was required in this case and that no such expert had been identified. Plaintiffs appeal the granting of the motions for summary judgment and the dismissal of their suit against Defendants.

**DISCUSSION**

Plaintiffs argue the trial court erred in finding that Defendants were entitled to summary judgment because it found that they had failed to produce an expert witness to support their claims in the medical malpractice case. They contend that expert testimony is not always necessary in order for a plaintiff to meet his burden of proof in establishing a medical malpractice claim. Further, they assert that there are instances in which the medical and factual issues are such that a lay jury can perceive negligence in the charged physician's conduct as well as any expert, or in which the physician testifies as to the standard of care and there is objective evidence which demonstrates a breach thereof.

Plaintiffs also argue that Defendants' conduct in this matter was not complex or complicated but, instead, involved medical and factual issues that a lay jury could perceive as negligence just as readily as an expert. They claim that their charges against Defendants are simply that they failed to monitor the levels of Dilantin administered to Nolan, and that if they had

properly done so, he would not now suffer with permanent developmental delays and related damages.

Defendants argue that summary judgment is appropriate because after an opportunity for adequate discovery, summary judgment shall be granted if the motion, memorandum and supporting documents show that there is no genuine issue as to material fact and that mover is entitled to judgment as a matter of law. They contend that a claimant in the medical malpractice action has the burden of proving the degree of knowledge or skill possessed or ordinarily exercised by physicians, that the defendant either lacked this degree of knowledge or skill or failed to use reasonable care and diligence along with his best judgment in application of the skill, and that as a proximate result of his lack of knowledge or skill or the failure to exercise it, the plaintiff suffered injuries that otherwise would not have been incurred. They assert that because Plaintiffs failed to meet their burden of proof, summary judgment is appropriate in this case.

A summary judgment is reviewed on appeal de novo, with the appellate court using the same criteria that govern the trial court's determination of whether summary judgment is appropriate, i.e., whether there is any genuine issue of material fact and whether the movant is entitled to judgment as a matter of law. *Samaha v. Rau*, 07-1726 (La. 2/26/08), 977 So. 2d 880; *Logan v. Richland Par. Hosp.*, 56,127 (La. App. 2 Cir. 4/9/25), 408 So. 3d 1208, *reh'g denied* (5/15/25), *writ denied*, 25-00760 (La. 10/1/25), 417 So. 3d 570. A motion for summary judgment shall be granted if the motion, memorandum and supporting documents show that there is no genuine issue as to a material fact and that the mover is entitled to judgment

7

as a matter of law.  La. C.C.P. art. 966(A)(3); *Staten v. Glenwood Reg'l Med. Ctr.*, 53,220 (La. App. 2 Cir. 1/29/20), 290 So. 3d 280, *writ denied*, 20-00591 (La. 9/23/20), 301 So. 3d 1184.  The burden of proof on a summary judgment motion remains with the mover.  La. C.C.P. art. 966(D)(1).  However, if the moving party will not bear the burden of proof on the issue at trial and points out that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, then the nonmoving party must produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial.  *Id.*; *Staten*, *supra*.  If the opponent of the motion fails to do so, there is no genuine issue of material fact and summary judgment should be granted. *Staten*, *supra.*

In a medical malpractice action, the plaintiff has the burden of proving: (1) the applicable standard of care, (2) that the standard of care was breached and (3) that as a proximate result of the breach, the plaintiff sustained injuries that would not otherwise have been incurred.  La. R.S. 9:2794(A); *Staten*, *supra*.  Expert testimony is generally required to establish the applicable standard of care and whether that standard was breached, except where the negligence is so obvious that a lay person can infer negligence without the guidance of expert testimony.  *Samaha v. Rau*, *supra*; *Staten*, *supra*.  The requirement of producing expert medical testimony is especially apt when the defendants have filed summary judgment motions and supported such motions with expert opinion evidence that their treatment met the applicable standard of care.  *Staten*, *supra*.

In *Samaha*, *supra*, the Louisiana Supreme Court observed that "by law, the report of the expert opinion reached by the medical review panel is admissible as evidence in any action subsequently brought by the claimant in a court of law" and that "[t]his undoubtedly includes a summary judgment proceeding in a medical malpractice lawsuit." It is well settled that a defendant-health care provider can use the medical review panel's favorable opinion to support a summary judgment motion. *Staten*, *supra.*

The only documents that may be filed or referenced in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, certified copies of public documents or public records, certified copies of insurance policies, authentic acts, private acts duly acknowledged, promissory notes and assignments thereof, written stipulations and admissions. La. C.C.P. art. 966(A)(4).

Plaintiffs failed to obtain any expert witness to support their contention that Defendants breached the applicable standard of care and that the breach caused the damages alleged. This is a very complicated medical malpractice case and does not present facts from which a layperson could infer negligence without the guidance of an expert in the field of neonatology. Plaintiffs have failed to meet their burden of proof to show that genuine issues of material fact remain; and, therefore, summary judgment is appropriate. For these reasons, this assignment of error is without merit.

**CONCLUSION**

For the foregoing reasons, we affirm the granting of the motions for summary judgment in favor of Defendants Marc De Soler, M.D., Amanda

9

Carnes, NNP, and Kathleen Lirette, NNP.  Costs of the appeal are assessed to Plaintiffs Christopher Spires and Laura Lively.

**AFFIRMED.**